## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEAH REBEKKA ADAMS, | |
| Plaintiff, | CIVIL ACTION NO. 3:23-CV-01344 |
| v. | (MEHALCHICK, J.) |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | |
| Defendant. | |

### MEMORANDUM

Before the Court is a motion for judgment on the pleadings filed by Defendant, the Pennsylvania Department of Corrections (the "Department of Corrections") on May 31, 2024. (Doc. 16). Plaintiff Teah Rebekka Adams ("Adams") initiated this action by filing a complaint against Defendant on August 13, 2023, asserting one count of violation of the Americans with Disabilities Act ("ADA"). (Doc. 1). For the following reasons, Defendants' motion for judgment on the pleadings will be **GRANTED**. (Doc. 16).

### I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from Adams's complaint. (Doc. 1). Beginning on September 10, 2007, Adams became employed as a Correctional Officer for the Department of Corrections. (Doc. 1, ¶ 6). She continued in this at-will position for 14 years. (Doc. 1, ¶ 6). Adams has a medical condition known as cone-rod dystrophy, which causes progressive degeneration of vision. (Doc. 1, ¶ 10). In 2020, the Department of Corrections scheduled a medical examination for Adams with Dr. Mark. A. DiPillo for Juy 28, 2020 to evaluate her condition. (Doc. 1, ¶ 11). On August 4, 4040, Dr. DiPillo issued his report, which stated that

Adams's condition would make it "difficult and highly risky" for her to supervise, discipline, and control prisoners. (Doc. 1, ¶ 12). On September 15, 2020, the Department of Corrections responded to Adams's request for accommodations pursuant to the ADA with a memo which confirmed Adams had a medical disability and offered Adams a "Clerk 2" position as a result of Dr. DiPillo's examination. (Doc. 1, ¶ 13). The Clerk 2 position did not require Adams to supervise inmates and came with reduced pay and benefits. (Doc. 1, ¶ 13). Adams responded to the memo by submitting two medical reports from eye specialists which contradicted Dr. DiPillo's findings in part. (Doc. 1, ¶ 14). Specifically, both specialists opined that Adams was capable of performing H1 job classifications, such as roving a housing unit, night shift positions, hallway officer positions, or warehouse positions, each of which included limited interactions with inmates but seemingly did not result in the same pay or benefits cut. (Doc. 1, ¶ 14). According to Adams, the Department of Corrections failed to address her submissions of additional medical opinions and instead responded by telling Adams that she would need to accept the Clerk 2 position or her employment would be terminated. (Doc. 1, ¶ 16). Adams appealed that decision on three separate occasions without success. (Doc. 1, ¶¶ 17-19). On May 7, 2021, Adams was advised that her medical leave of absence would end, and she would be required to resign, apply for regular or disability retirement, or accept the Clerk 2 position, which is a demotion, according to Adams. (Doc. 1, ¶ 20). Adams did not accept the Clerk 2 position, and accordingly, resigned from her position as a Correctional Officer. (Doc. 1, ¶ 21). As a result of the events alleged, Adams avers that she suffered economic loss and emotional distress. (Doc. 1, ¶¶ 27-35). Adams has exhausted her administrative remedies with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. (Doc. 1, ¶ 25).

Adams initiated this action by filing a complaint against the Department of Corrections on August 14, 2023. (Doc. 1). On October 24, 2023, the Department of Corrections filed its amended answer and affirmative defenses to the complaint. (Doc. 10). On May 31, 2024, the Department of Corrections filed the motion for judgment on the pleadings, as well as a brief in support. (Doc. 16; Doc. 17). In response, Adams filed a brief in opposition to the motion for judgment on the pleadings on June 24, 2024. (Doc. 22). The motion is fully briefed and ripe for disposition. (Doc. 16; Doc. 17; Doc. 22).

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and thus, the movant is required " 'to clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion to dismiss, construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); Thus, to survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009)).

"In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)). When adjudicating a motion for judgment on the pleadings, the court should generally consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see* *Atiyeh v. Nat'l Fire Ins. Co. of Hartford,* 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record.").

## III. DISCUSSION

The Department of Corrections argues that it is entitled to judgment on the pleadings because it is immune to suit for claims brought under Title I of the ADA. (Doc. 17, at 4). Specifically, the Department contends that, as an arm of the state, it is entitled to Eleventh Amendment immunity from Adams's Title I ADA claim for monetary damages. (Doc. 17, at 4-5). The Department of Corrections argues that *Ex Parte Young*, which creates an exception to state sovereign immunity for claims seeking prospective relief, does not apply here as Adams brought this suit against only the Department of Corrections and did not name any individuals in their official capacity, as required for the *Ex Parte Young* exception. (Doc. 17, at 6). Adams responds that the Department of Corrections waived its sovereign immunity and

that the *Ex Parte Young* fiction applies to Adams's claim seeking prospective relief via reinstatement. (Doc. 22, at 3, 9). This Court agrees with the Department of Corrections.

The Eleventh Amendment to the United States Constitution precludes private individuals from bringing suit against a state, or one of its agencies, in federal court. U.S. Const. amend. Xi; *see Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984). Such immunity may also extend to suits brought against "'arms' of a state." *Patterson v. Pennsylvania Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (quoting *Karns v. Shanahan*, 879 F.3d 504, 512-13 (3d Cir. 2018)); *Mt. Healthy City Sch. Dist. Bd. Of Edu. v. Doyle*, 429 U.S. 274, 280 (1977) (same). A party is considered an 'arm of the state' for immunity purposes "when 'the state is the real, substantial party in interest.'" *Patterson*, 915 F.3d at 950 (quoting *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002)). The Third Circuit has held that the Pennsylvania Department of Corrections is an arm of the state for sovereign immunity purposes. *See Walker v. Beard*, 244 Fed. Appx. 439, 440 (3d Cir.2007) ("because the Pennsylvania Department of Corrections is a part of the executive department of the Commonwealth of Pennsylvania, it shares in the Commonwealth's Eleventh Amendment immunity"); *Fattah v. Sabol*, No. CIV.A. 3:10-1607, 2012 WL 1005070, at *4 (M.D. Pa. Mar. 23, 2012).

Eleventh Amendment immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and may be properly considered by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). "This jurisdictional bar applies regardless of the nature of the relief sought," including suits brought by plaintiffs in equity. *Pennhurst*, 465 U.S.

at 100 (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)). Eleventh Amendment immunity is not absolute, however. There are three narrow exceptions to Eleventh Amendment immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). The Court will address the first two narrow exceptions, congressional abrogation and state waiver together, as both exceptions are relevant to the parties' dispute about Adams's monetary damages claims. The Court will then turn to whether Adams's claim for reinstatement of her employment falls within the third exception to sovereign immunity regarding prospective relief against state officers.

A.    Adams'S CLAIM FOR MONETARY DAMAGES

The Department of Corrections contends that it is entitled to judgment on the pleadings regarding Adams's ADA claim seeking damages because "all claims asserted against a state agency seeking monetary damages brought under Title I of the ADA are barred by the Eleventh Amendment[.]" (Doc. 17, at 4). Adams responds that Title I of the ADA abrogates the Department's sovereign immunity and further, that the Department waived its sovereign immunity. (Doc. 22, at 3-4).

It is well-established that Congress has not abrogated sovereign immunity with respect to Adams's Title I ADA claims. *See Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 166 n.3 (3d Cir. 2002) ("As noted, in *Garrett*, the Supreme Court held Congress's abrogation of states' Eleventh Amendment immunity under Title I of the ADA was invalid") (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 368-69 (2001)). Title I of the ADA in relevant part provides: "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or

discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112 (emphasis added). To determine if Congress abrogated sovereign immunity, the court must determine whether there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Tennessee v. Lane*, 541 U.S. 509, 520 (2004) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)). This "congruence and proportionality" test requires that:

> … the court must: (1) identify "with some precision the scope of the constitutional right at issue;" (2) examine whether Congress has identified a history and pattern of unconstitutional discrimination by the states; and (3) determine whether the rights and remedies created by the ADA against the states are congruent and proportional to the constitutional injury sought to be prevented.

> *Shaw v. Pennsylvania Dep't of Corr.*, No. CV 17-229, 2018 WL 6831148, at *5 (W.D. Pa. Dec. 28, 2018) (citing *Garrett*, 531 U.S. at 363).

Applying the "congruence and proportionality" to Title I of the ADA, the Court in *Garrett* determined that "[t]he legislative record of the ADA … fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *Garrett*, 531 U.S. at 365, 368, 372–73. Instead, congressional findings focused on employment discrimination in the private sector, and "Congress assembled only such minimal evidence of unconstitutional state discrimination in employment against the disabled." *Garrett*, 531 U.S. at 369–70. Accordingly, the Court held that Title I did not validly abrogate the states' sovereign immunity. *Garrett*, 531 U.S. at 375. Thus, Congress has not abrogated the Department of Corrections's sovereign immunity with respect to Adams's claim for damages under Title I of the ADA.

The Court next turns to whether the Department of Corrections has otherwise waived its immunity. Adams argues that the Department of Corrections waived its immunity by not

specifically identifying the immunity it sought to assert as Eleventh Amendment sovereign immunity in its amended answer and affirmative defenses. (Doc. 22, at 3). Adams further contends that the references to the ADA in the Department's produced administrative record amounts to waiver. (Doc. 22, at 4).[1]

The purpose of requiring parties to plead affirmative defenses is to provide "fair notice" to the opposing party about the nature of a defense. *See Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566 (M.D. Pa. 2015) ("Rule 8(c) applies to affirmative defenses and requires a party only to 'affirmatively state any avoidance or affirmative defense.'") (quoting Fed. R. Civ. P. 8(c)). "'[S]tating an affirmative defense provides 'fair notice' without specific factual allegations for each element of the defense as long as the defense is logically within the ambit of the general factual allegations in the litigation." *Mifflinburg Tel., Inc.*, 80 F. Supp. 3d at 574; *see also Balon v. Enhanced Recovery Co., Inc.*, 316 F.R.D. 96, 104 (M.D. Pa. 2016). "The Third Circuit has not yet considered whether the *Twombly* and *Iqbal* decisions affect the pleading requirements for affirmative defenses" however "[t]he consensus of district courts in this circuit is that the heightened pleading standard under *Twombly* and *Iqbal* does not apply to such defenses." *U.S. Bank Nat'l Ass'n v. Gerber*, 380 F. Supp. 3d 429, 438 (M.D. Pa. 2018). "Rule 8 provides that a party must merely state, not show, an affirmative defense." *Tyco Fire Prod. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 901 (E.D. Pa. 2011). "[T]he Third Circuit has

---

[1] This Court is unable to find any cases where a party's references to the ADA in suit or in internal communications amount to waiver of sovereign immunity. This is logical because sovereign immunity does not relieve a government entity of its statutory obligations, but instead merely limits liability for specific parties. *See Cooper v. Comm'r*, 718 F.3d 216, 220 (3d Cir. 2013) (Stating that "[u]nder the doctrine of sovereign immunity, the United States 'is immune from suit save as it consents to be sued'" without relieving an agency from its statutory duties). Plaintiffs can still bring suit via the *Ex Parte Young* theory against individual state officers, as discussed *infra*.

held that a 'defendant does not waive an affirmative defense if [it] raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in [her] ability to respond.'" *Mines v. City of Philadelphia*, No. CIV.A. 93-3052, 1994 WL 386362, at *2 (E.D. Pa. July 22, 1994) (quoting *Charpentier v. Godsil*, 937 F.2d 859 (3d Cir. 1991)) (quotations omitted).

While the Department of Corrections did not support its inclusion of its immunity affirmative defense with detailed factual allegations or specify that it was Eleventh Amendment immunity it sought to invoke, it was not required to do so. (Doc. 10, at 9); *see Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 97 (D.N.J. 2014) ("the heightened *Twombly/Iqbal* standard is not applicable to the pleading of affirmative defenses under Rule 8(c) which simply requires that party responding to a pleading must 'affirmatively state any avoidance or affirmative defense.'") (quoting Fed. R. Civ. P. 8(c)). The Court therefore finds that Defendant's Eighth Affirmative Defense, stating "The Department acted at all times with the good-faith belief that their conduct was lawful, and are therefore immune from liability by virtue of qualified or other immunity" provided sufficient notice to Adams that the Department of Corrections would seek to assert immunity. (Doc. 10, at 9). The only logical immunity available to the Department here is sovereign immunity, as the only named defendant in the suit is an arm of the state. (Doc. 1). This should have put Adams on notice of the Department's intent to raise its governmental immunity defense. Further, the Third Circuit has held that even when a defense is not included in a party's affirmative defenses, a Court may determine that the party still did not waive such defense so long as the defendant raised the issue in a pragmatically sufficient time and the plaintiff was not prejudiced. *See Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1373 (3d Cir.1993) ("a party may raise an

unpled affirmative defense in an appropriate motion."). In *Kleinknecht v. Gettysburg College,* the court recognized an immunity defense that defendants raised for the first time in a motion for summary judgment. *See Kleinknecht*, 989 F.2d at 1374. While this Court finds that Adams was on sufficient notice based upon the Department's Eighth Affirmative Defense, the present motion for judgment on the pleadings is an appropriate motion in which it may raise its immunity defense. *See Kleinknecht*, 989 F.2d at 1374 (finding that a defendant did not waive its immunity defense even though it raised it for the first time in its motion for summary judgment because "it would be inappropriate [. . .] to decide the immunity issue on the basis of waiver."). For these reasons, Adams's Title I ADA claim for damages against the Department of Corrections is barred by sovereign immunity. *See Koslow*, 302 F.3d at 166 n.3. The motion for judgment on the pleadings with regards to Adams's damages claim is **GRANTED**.

B.    ADAMS'S CLAIM FOR INJUNCTIVE RELIEF AND *EX PARTE YOUNG*

The Department of Corrections also moves for judgment on the pleadings because it submits that the *Ex Parte Young* exception does not curtail its immunity regarding Adams's claim for injunctive relief. (Doc. 17, at 6). The Department reasons that it is immune to Adams's claims for prospective relief because Adams brought this suit against only the Department of Corrections, not against any state officer, as required for the *Ex Parte Young* exception. (Doc. 17, at 6). According to Adams, the *Ex Parte Young* exception applies to Adams's claim seeking injunctive relief via reinstatement. (Doc. 22, at 3, 9).

To reiterate, Eleventh Amendment immunity extends to "state agencies[, state] departments ... and state officials sued in their official capacity." *Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 411 (M.D. Pa. 2008). "Suits against state officials in their personal

or individual capacity, however, are not barred by the Eleventh Amendment." *Larsen*, 553 F. Supp. 2d at 411. "[A] suit against a state officer seeking prospective relief designed to end a continuing violation of federal law is not barred by the Eleventh Amendment under the theory that the action is not against the state because the alleged violation of federal law strips the officer of his official authority. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Pennhurst*, 465 U.S. at 103). Additionally, the prospective injunctive relief exception outlined in *Ex Parte Young* is inapplicable to state agencies. *See Walker*, 244 F. App'x at 440 (citing *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)) (The Eleventh Amendment immunity exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."); *see also Ex Parte Young*, 209 U.S. 123. "States [and] their agencies ... retain their immunity against all suits in federal court." *Puerto Rico Aqueduct and Sewer Authority*, 506 U.S. at 146. Accordingly, the Department's motion for judgment on the pleadings with respect to Adams's claim for prospective relief in the form of reinstatement shall be **GRANTED**. (Doc. 16); *See Ricker v. Pennsylvania Dep't of Corr.*, No. 3:21-CV-00467, 2022 WL 533818, at *4 (M.D. Pa. Feb. 22, 2022) ("[A plaintiff] is unable to bring a claim against [d]efendant DOC for injunctive relief and his claims against it shall be dismissed.").

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d

Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). The Court shall grant Adams leave to amend her complaint in an attempt to cure the deficiency outlined herein. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Grayson*, 293 F.3d at 108.

**V.    CONCLUSION**

For the foregoing reasons, the motion for judgment on the pleadings (Doc. 16) is **GRANTED**. Adams's complaint is **DISMISSED**. (Doc. 1). Adams shall be granted 28 days to file an amended complaint.

An appropriate Order follows.


Dated: January 13, 2025                          *s/ Karoline Mehalchick*
                                                 **KAROLINE MEHALCHICK**
                                                 **United States District Judge**